FRY v. FRY.

DIVORCE—EXTREME CRUELTY—EVIDENCE—SUFFICIENCY.
In a suit by a wife for divorce on the ground of extreme cruelty, evidence *held*, sufficient to sustain the finding of the court below that plaintiff was entitled to a decree.

Appeal from Tuscola; Beach (Watson), J.   Submitted June 17, 1921.   (Docket No. 113.)   Decided July 19, 1921.

Bill by Clara M. Fry against Nelson Fry for a divorce.   From a decree for plaintiff, defendant appeals. Affirmed.

*H. H. Smith*, for plaintiff.

*B. F. Reed*, for defendant.

STEERE, C. J.   The parties to this suit were married September 15, 1908, in the village of Vassar, Tuscola county, and thereafter lived together as husband and wife in various places during most of the time until April, 1920.   On June 21, 1920, plaintiff filed her bill of complaint in Tuscola county to obtain dissolution of their marriage relations on the ground of extreme cruelty, neglect and non-support.   Defendant appeared and filed answer denying the various charges of misconduct made against him.   The case was heard on pleadings and proofs taken in open court on December 24, 1920, and on February 11, 1921, a decree of divorce was granted plaintiff, in which the court found "that all the material facts charged in the bill of complaint are true and that the said defendant has been guilty of the several acts of extreme and repeated

cruelty therein charged." She was given custody of their infant son, granted $150 attorney fees and other costs, and in lieu of dower she was awarded full title in fee to a house and lot in Flint, which they had held as tenants by entirety.

Defendant's people were farmers and he was a farm laborer when married. They lived with defendant's parents and in rented houses in the vicinity of Vassar for nearly 8 years. His occupation during that time, so far as shown, was farm work for his father and others. He was not very enterprising or thrifty, was quick tempered, frequently gave way to what plaintiff calls "mad spells," and, beginning early in their married life, he would at times when angered ill-treat her, freely applying abusive and profane epithets to her and sometimes would do her personal violence. That he had an ungovernable temper and gave way to such "mad spells" towards his wife from time to time during most of their married life is shown by abundant evidence.

In 1916 they moved to Flint, and there experienced for the first time a degree of prosperity beyond their bare necessities, largely due, as the evidence indicates, to plaintiff's thrift and industry. Defendant was a large, strong man, capable of earning good wages, as he did at times, but was unsteady, erratic and unreliable. It is undisputed that during their married life plaintiff cared well for their home wherever it might be, also worked out at times, in fields, at private houses, in factories, did washing for others and kept boarders. While living in Flint they acquired besides their household effects, etc., a 40 acres of farm land valued at $500 and a house and lot in Flint valued at $2,000. This realty was in their joint names as husband and wife. Defendant bought the house and lot on a land contract, but after making payments to the

amount of $110, he became dissatisfied, quit paying and proposed to let it go. Plaintiff then assumed the undertaking and kept up the payments by her own earnings, working in a factory and elsewhere until the property was fully paid for and deed obtained.

Plaintiff was a woman of good character, religiously inclined and a faithful attendant of the church to which she belonged, with which he at times profanely found fault, and his spasms of vile vulgarity and profanity at her when in one of his mad spells especially shocked and grieved her. That she was a faithful and helpful wife while they lived together he does not deny. His denials are confined to her charges of ill-treatment and cruelty made against him. His testimony indicates that he regarded her as a valuable asset in his scheme of life which he wishes to retain. Two male children were born of this marriage, the first early in their married life. Plaintiff testified bitterly of defendant's cruelty in whipping this little fellow when angry at him, and his violence toward her when she sought to protect the child, which was only three years old when it died in 1912. Their living child, awarded to her, was an infant son four weeks old when she filed this bill of complaint. He was born at her mother's home in Vassar where she went to secure proper care and nursing during confinement. During that period, as plaintiff testifies, defendant neglected her, was inconsiderate and abusive, found fault with her going to her mother's for confinement, charged her in his sallies of passion with chasing up and down the streets of Vassar, intimated he was not the father of the expected child, threatened to sell their home and said there would be "a funeral in this house in a few days" if she did not go back home. His threats and abuse at such a period, in connection with the birth of their child and reviving memories of the one they had lost were the culmin-

ating causes which moved her to refuse to return, and seek a divorce, claiming that life with defendant was no longer endurable.

To go at length into the details of the evidence would be beneficial to no one. There is abundant convincing proof in the record to sustain the findings of the trial judge.

The decree is affirmed, with costs to plaintiff.

MOORE, WIEST, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.